May it please the court, my name is Bruce Locke and I represent Lester Simmons in this case. This case is a situation in which the government wants to forfeit $1,200,000 without having to prove that the money is actually subject to forfeiture. They're doing that by contesting Mr. Simmons' standing to bring this case, claiming the money. Mr. Simmons was convicted of tax evasion. In connection with that tax evasion plea, he pled guilty. He admitted that the two trusts that are at issue in this case were shams for income tax purposes. In other words, he had used the trusts as a device to channel money from his company into the trust without the company deducting the money when it shouldn't have been deductible. Counsel? Yes. The notice of appeal says that Lester Simmons, trustee of the Viking Trust and trustee of the Newport Coast Trust, appeals. And the notices of claim or the amended claims to property are similarly worded. They say Simmons, trustee. Why should we treat this as a claim by Simmons in his own right? It seems like a lawyer's trust account. It says trust account. It means you're not talking about your money. You're talking about the client's money. This seems like the same thing. Right. In the first instance, Your Honor, I don't think that you should. I think that the mere fact that the trusts were shams for income tax purposes does not mean that the trusts are shams for all purposes. At the time that the money was seized, Lester Simmons held the money as the trustee of the two trusts. That's how the title to the money was held. And, therefore, I think that he is, as trustee, the proper claimant to the money. He is the trustee holding the money. The money was seized from him. He's the proper one to claim the money on behalf of the trust and the beneficiaries. It's only in response to the government's argument, the government says, well, the trusts are shams, and so we should disregard the trusts. That's the government's argument. And my response to that is, well, if you're going to disregard the trusts for that purpose, then you should disregard that he's the trustee. I mean, just ignore it, in which case he's making the claim for himself. I don't think the government can say we're going to disregard part of this, but we're going to treat him still as if he's a trustee for purposes of making the claim. There is no question, but this is Mr. Simmons' money. I suppose the question that comes up then is if someone makes a claim as a trustee for a void trust, you might just say, well, that's a bad claim. You wouldn't necessarily start looking toward him as an individual. No, but where that person is the creator of the trust, I think that you would treat it as if it's just he's making the claim to the money. Where was the money when it was seized? In bank accounts. So they just levied on the bank account? That's right. There were four bank accounts, two corporate accounts, two trust accounts. And these two trust accounts were in the name of Lester Simmons, trustee for the two trusts. And those are the only funds here? That's the only funds here. The others have been settled. Are we talking about whether he gets credit for the money they took from the bank accounts against his tax debt? No, his tax debt, they also seized another $3 million later on and did a jeopardy assessment and applied that to the taxes and, in fact, returned some money from that seizure to him. Why can't the government have its cake and eat it, too? I mean, I realize it doesn't sound very fair, but sometimes the law comes out that way in forfeiture. Very often it does. Innocence is no defense under Calero-Toledo. It's that kind of law. Do you have some case or something that we can rely on? Well, under California law, I cited the Hansen case in the brief, which holds that that case dealt with an argument that this trust should be void because it was used for tax evasion purposes. And the California court said even assuming that the trust was used for tax evasion purposes, it's still a valid trust under California law. But Hansen is a state law case. That's correct. And if Mr. Simmons had died the day before the money was seized, the trust would have controlled where the money went. The beneficiaries are his daughter and the mother of the daughter. He's not married to the mother of the daughter. But those were the beneficiaries. That trust would have been a valid trust under state law, and its provisions would have applied. Presumably the bank would permit withdrawals by Simmons as trustee. They did. They did permit withdrawals by him as trustee. Just like any other trustee, he could do what the trustee can do. And so the problem I have with the lower court's decision is it seems to assume that if the trust is void, nobody owns the money. I mean, it's like, well, nobody owns it, I guess. Whereas if the trust is void for income tax purposes, you can't claim that that is a separate taxable entity. It's Mr. Simmons' money. He should have been taxed on it. Well, I suppose the lower court's really saying that he should have claimed both as an individual and as trustee. I think that's what he— But there may have been tactical reasons why he didn't want to do that. There were. And that's frankly—at the same time that he was doing the claim, he was being arrested and prosecuted for the tax evasion. And so his lawyer, not me, said, well, I want to make this clear that he's claiming the money as the trustee of the trust. But that's how he was holding the money. It's perfectly logical for him to claim the money because that's how he was holding it. Mr. Counsel, he disavowed any connection to the money for purposes of qualifying for the services of a federal public defender, didn't he? He did initially. Then about two weeks later, he retained attorneys. I was one of the federal defenders appointed to represent him. That's how I got into the case. It became clear he had money, and that was the end of the federal defender part. He was claiming that the money was his in-laws' money and that they had put it into the trust, but it was clearly his money, and that within a very short period of time, it would have been foolish to continue to pursue that it wasn't his money. I'm persuaded by your argument that somebody has to own the money, and if the trust doesn't because it's a sham, then he does. I go with you that far, and then I get to the problem, well, he didn't make a claim for the money, and he had good reason. It's like somebody knowing that there's drugs in a suitcase, and someone says, this is your suitcase, and he says no. I think that money was trouble. I think he did make claim for the money, and saying I'm doing it as the trustee is just saying this is how I'm holding it. I mean, that's the title to which he held it. He held it as trustee. Wait, wait. When you hold money as trustee, it means you have legal title. Someone else has beneficial title. That's why a lawyer has a trust account. So if he goes broke and people execute, they don't get his client's money. Correct. And that's how Mr. Simmons was holding the money. He was holding it in trust for his kid. I mean, he also used it to avoid taxes, but he was still holding the money in trust, and if he had died the day before they seized it, the money would have gone in accordance with the terms of the trust to his daughter and to her mother. And so I don't see, I guess what I would say is that a sham, whether it's a sham or not, depends upon the context in which you're examining that situation. It can be a sham for income tax purposes. We're going to disregard it. But for purposes of who's holding the money and whose the money belongs to and under what terms, it's a valid trust. It's a valid trust under state law, and its terms should be followed. Thank you very much. Thank you, counsel. Counsel. Good morning, Your Honors. Courtney Lynn for the United States. The harshness of the result here, the result that the district judge reached, falls squarely on the person who perpetrated the fraud. It was Mr. Simmons who drew carefully the distinction between himself and his individual capacity and that in the trust in his amended claims. It was Mr. Simmons who drew that distinction and suffered the consequences of it when that fact, the fact that he had used these trusts to conceal his money, formed the basis for his criminal conviction. And it's the distinction, the distinction between holding title to an asset in one capacity versus another that the Supreme Court in Vendor and Karcher has carefully observed. Mr. Locke in his argument speaks in subjunctive tense about a lot of things that may or may not happen with respect to these assets, these trusts, Mr. Simmons' obligations under these trusts, and so forth. The burden of demonstrating standing was at all times the trust burden below. The only evidence presented to the district court showed that Mr. Simmons held this money to conceal, in his capacity as trustee, to conceal his own true ownership and interest in it as a subterfuge, just as this Court has recognized in the vacant land case, just as the Court has recognized in the real property, Lot 111B case. He did not put forward any evidence of any kind to show that the trust had any other capacity or any other role other than to hold property as a subterfuge. Does this matter? It seems like it's conceded. He's conceded that the trusts were a sham for tax evasion purposes. He's conceded that they're shams for tax evasion purposes, but that answer is just one of two of the government's arguments. The government's first argument is, let's pretend for a moment and suspend this belief that the trust exists. Let's assume it's a pure sham. He just gives his money to his mother and says, I evaded taxes, and I don't want the feds to get my money. You hold it for me so that when they come after all my money, they won't find it. And just the purest use of a straw to hold the money. Correct. And the government nevertheless finds the money and takes it. I think we're already down to there by stipulation. Correct. We're down to there by stipulation, but I don't think what Mr. Locke's stipulation answers. Now the question is whether to carry out my hypothetical case a little further. It's the mother making the claim or the son making the claim. Right. And the mother, if you will, or the son in this case, never brought a claim as individual capacity for the reasons that Judge Rawlinson's question illustrated. Well, in his example, why couldn't the mother have standing to contest the forfeiture? If the mother merely held straw title to the property, she couldn't under this court's precedent. Well, certainly the trusteer held straw title, didn't he? The trustee held straw title, and so the trustee doesn't have standing either to contest the forfeiture. If that's all he holds is bare title as a subterfuge for someone else who is the true owner. And a trustee has no capacity to even a straw trustee. A straw trustee, you say, doesn't have any standing to contest the forfeiture. They can come in and the government come in and say, we're taking this money, and you can't object because you're holding it for somebody else. If the trustee could come forward with evidence, as is the trustee's burden, to show, yes, this is a legitimate trust. We hold meetings. We keep records. I account for the money, and I distribute it. Trust don't hold meetings and keep records necessarily. This trust did. In the terms of the trust, there were two trustees. You can hold it as a trustee just because the deed to you says so. For example, if you're a Californian, I think they work the same as Alaska. I think they use deeds of trust instead of mortgages on real estate, the conveyances to the trustee under the deed of trust. And there are no meetings and no records, no nothing, unless there's foreclosure. Under the terms of these trusts, and there were trust documents that are part of the excerpts of record, both the trust documents had two trustees, and the trust documents contemplated that the trustees would hold meetings, keep records, file taxes, distribute money to beneficiaries. If any of these things occurred, anything that – Or narrowly, the trustee doesn't have to file taxes because there's no income to the trustee. Well, there would be income to the trust. So the trustee would have an obligation to file a tax return on behalf of the trust if the trust had income. Your idea of what trusts do is odd to me. I mean, it doesn't characterize most trust relationships. This is a strange case, Your Honor. A lawyer, when he has a trust account for a client, doesn't hold meetings and he doesn't file tax returns, because ordinarily he gets no income on the trust. I confess I'm being led a little bit into some hypotheticals because we don't have any evidence about what these trusts did. There was none presented. Counsel, we're led into a discussion of trust law because that's what the case is about. Correct. And the trust law provides – And I'm confused by what you're saying, and that's why I'm exploring it. You're talking about holding meetings and filing returns as though we're talking about corporations. We're talking about – my point is that the trusts are not only the straw owners, but they're invalid trusts because the purpose for which the trust existed was to mislead the government under resettled law, restatement law, California law, Professor Bogart on trust. Already conceded, but it's still somebody's money until the government successfully forfeits it. And in the case of – It can't be circulated here and say the government's money from the get-go because of the fraudulent purpose. It's somebody else's money until the government forfeits it. And the question is, who can fight the forfeiture? I would think that if the bank tried to take your – well, you're a government lawyer. You don't have a trust account. But if you were a private lawyer, you would. And if the bank tried to take your trust account because you hadn't paid your mortgage or your credit card or something like that, you'd call them up and say, no, you can't do that. And they'd say, well, what do you care? It's not your money. It's your client's money. If you say it's a trust account, you'd say that's exactly why you can't take it. Mr. Simmons in his individual capacity undoubtedly could have contested the forfeiture of the Viking Trust Funds and – I'm sorry, the Newport Coast Trust Funds and probably also the Viking Coast Trust Funds. The Viking Coast Trust, the bank account that it held as an asset, there were only two signatories to that bank account, the dead Dr. Uhlenstein and Ute Simmons or Ute Uhlenstein. So Ute Uhlenstein probably would have also had an ownership claim interest in those funds. She fled to Germany to avoid the tax charges, leaving Mr. Simmons as the only true owner or potential true owner to both the Newport Coast Trust Funds and possibly also the Viking Trust Funds if he could have overcome the hurdle that he had no signature authority over that account. He had no signature authority over one of the two accounts? Correct. He did have over the other account? He did. Was he named as a trustee on both accounts? He was named as a trustee on both of the trusts who nominally held title to those accounts. But so far as the record discloses, the Bank of America, where the Viking Trust money resided, had only two signatories, the dead Dr. Uhlenstein and Ute Simmons. It's common in a testamentary trust situation, the kind actually where you have two living trusts, a marital deduction trust and a save-the-second-tax trust, for the bank and the surviving child to be co-trustees, but the surviving child has no signature authority over the funds. The bank has the signature authority and manages the money. Is this any different? It's hard for me to answer that because I don't know, for example, if the trust documents were ever presented to the bank and if the bank would have recognized those trust documents. You're supposed to decide the case without reading the trust documents. You have the trust documents. They're part of the excerpt of record. I missed them. Where are they? They're in volume one. I can get you the page reference if you like, Your Honor. The government had sent requests for admissions to the trust, attaching to the request for admissions the trust documents and asking if these were the trust documents. The trust responded back, yes, these are the documents. Okay, I've got them. These irrevocable declarations of trust, they look like they're in printed forms? That's correct, Your Honor. Let me briefly, I have very little time left, respond to his reference to the Hansen case. Hansen was a case where the California Supreme Court said, if these trusts resulted in an evasion of federal taxes, that's a matter of federal taxing concern. What the court was saying was these private litigants don't have standing to complain on behalf of the United States if there was a tax evasion. That doesn't at all help us answer our question because standing before you is the United States in a case in which the claimant here, at least in his capacity, his individual capacity, was convicted of criminal tax evasion. So there is no question, absolutely no question, but that these trusts would be invalid because they were used to perpetrate a crime or to defraud the United States. Thank you, Your Honor. Thank you, counsel. I only have 11 seconds left. I forgot to ask any question, answer any question, but that's it. Thank you. Thank you very much. United States v. Simmons is submitted.
judges: Canby, Kleinfeld, Rawlinson